**PATTON WRECKING AND DEMOLITION CO., Inc., and Patton Bros., Inc., a joint venture, and Arkmiss Diving Company, Inc., Plaintiffs,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant.**

No. GC70-54.

United States District Court,
N. D. Mississippi,
Greenville Division.
March 16, 1971.

Clayton J. Swank, III, J. Murray Akers, Greenville, Miss., for plaintiffs.

Robert H. Marquis, Thomas A. Pedersen, Charles W. Van Beke, Melvin L. Harper, Tennessee Valley Authority, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

This is an action under the Declaratory Judgment Act (28 U.S.C.A. § 2201) against the Tennessee Valley Authority (hereinafter referred to as "TVA") for a declaratory judgment determining the rights and liabilities of the parties under a contract for underwater repairs to the stilling basin at Kentucky Dam, located at Gilbertsville, Kentucky, and to recover damages from TVA for anticipatory breach of the contract.

On April 10, 1969, a contract was awarded by TVA to plaintiffs, Patton Wrecking and Demolition Co., Inc. and Patton Bros., Inc., a joint venture (hereinafter referred to as "Patton"). The original contract estimated that Patton would provide services for chipping and cleaning eroded concrete surfaces amounting to 2,700 sq. ft. at the rate of $40.00 per sq. ft., or a total contract price of $108,000.00, and for drilling and setting steel anchors and placing concrete aggregate and intrusion grout aggregating 2,700 cu. ft. at the rate of $33.00 per cu. ft., for a total contract price of $89,100.00. Thus, the entire contract amounted to $197,000.00. The contract contains a provision that the quantities contained therein are estimates and might be exceeded by sixty percent (60%). The contract does not, however, make a provision for a decrease in quantities.

On July 23, 1969, an additional $3,800.00 was added to the contract for certain services which were to be required and were beyond contract requirements. The total amount of the contract was adjusted to $200,900.00.

On August 7, 1969, another change of contract was issued providing for the elimination of the requirement of chipping eroded concrete surfaces and leaving the only service to be performed that of cleaning eroded concrete surfaces together with drilling and setting steel anchors and placing concrete aggregate and intrusion grout. The total amount of the contract was then adjusted to the

present value of the contract, $179,300.-00 (estimated).

On or about June 2, 1969, Patton began repair to the Stilling Basin at Kentucky Dam and continued to do so until December 19, 1969, at which time work was suspended until the spring of 1970 as a result of high water and extreme cold weather conditions. It was at this point that the dispute between the parties arose.

Up until December 19, 1969, Patton cleaned 1,581.5 sq. ft. of eroded concrete surface and poured 839.7 cu. ft. of concrete aggregate and intrusion grout. Accepting as true the facts as alleged by Patton, upon a thorough inspection by Patton and TVA, it was determined that there remained to be performed under the contract approximately 175 sq. ft. of eroded concrete surface to be cleaned, and approximately 175 cu. ft. of concrete aggregate and intrusion grout to be poured under the contract.

Patton claims that TVA has anticipatorily breached the contract in that the amount of work available at the job site to be performed under the contract is approximately fifty-one percent (51%) less than that represented in the invitation to bid and provided for in the contract entered into pursuant to the bid of Patton. Patton estimates that the failure of TVA to furnish the quantity of work set forth in the contract has caused Patton to suffer damages in the sum of $85,806.90. Patton seeks to recover from TVA the sum of $85,806.90 and a declaratory judgment terminating the contract and discharging Patton from all liability in regard thereto.

On August 17, 1970, TVA filed a motion to dismiss Patton's action on the ground that the Court lacks jurisdiction to entertain it. TVA alleges that Patton has failed to exhaust the administrative remedies available to him under the contract. In the same motion TVA moves to dismiss the action as to Arkmiss .Diving Company, Inc., (Arkmiss) because the complaint fails to state a claim upon which relief can be granted. In the alternative, TVA seeks a summary judgment on the ground that the pleadings, together with the affidavit of L. W. Marks, which has been filed with the motion, show that there is no genuine issue as to any material fact and that TVA is entitled to judgment as a matter of law.

It is conceded that the action must be dismissed as to Arkmiss, there being no privity of contract between Arkmiss and TVA. Arkmiss does not bottom its demand against TVA on the contract between Patton and TVA. The motion to dismiss the action as to Arkmiss will be sustained.

In consideration of the motion to dismiss the material allegations of the complaint are to be taken as admitted. The complaint should not be dismissed unless it appears that Patton can prove "no set of facts in support of his claim which would entitle him to relief." [1] A summary judgment is proper only when the pleadings, admissions, affidavits, etc., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[2]

The administrative remedies to which TVA alludes are the remedies set forth in the "disputes clause" of the contract. This clause is set out in full in the footnote.[3] The motion of TVA to dis-

---

1. Jenkins v. McKeithen, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 1846, 23 L.Ed.2d 404, 416–417 (1969), separate opinion by Marshall, J., Warren, Ch. J. and Brennan, J.

2. Arrington v. City of Fairfield, Alabama, 414 F.2d 687, 692 (5th Cir. 1969).

3. "Any dispute arising out of or connected in any way with any obligation of the parties arising out of the performance or nonperformance of the contract whether arising before or after completion of performance, including disputes as to any alleged violation or breach thereof, shall be decided by the Contracting Officer on the basis of the contract file and any other facts which he may deem pertinent. The Contracting Officer shall reduce his decision to writing and promptly mail or otherwise furnish a copy thereof to the Contractor. Within thirty (30) calendar days from the receipt of such copy, the

miss the action, or, in the alternative to grant TVA a summary judgment is bottomed on the contention that Patton's claim that TVA anticipatorily breached the contract, constitutes a dispute which is governed by the "disputes clause" of the contract and must be submitted to the Contracting Officer for his decision and processed administratively before Patton has standing to seek relief in court.

There is no substantial disagreement between counsel as to the governing principles of law.[4]

The question, therefore, turns largely upon the interpretation of the "disputes clause" and whether the clause encompasses a dispute such as exists between the parties as shown by the record in this action. The only affidavit submitted to the court in connection with the motion for a summary judgment is the affidavit of the Contracting Officer which is to the effect that Patton has

never submitted to him, as the Contracting Officer, for his decision, the disputes shown to exist in the complaint filed by Patton.

The question for the court's determination is whether the alleged anticipatory breach of the contract by TVA constitutes a dispute which the parties have contracted to submit to the Contracting Officer, for his decision. If this question is answered in the affirmative the action is premature and should be dismissed.[5]

In United States v. Utah Construction and Mining Company, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) the Supreme Court was concerned with a suit for breach of contract originating in the Court of Claims. The contract contained a "disputes clause" which provided "that 'all disputes concerning questions of fact arising under this contract' shall be decided by the contracting officer subject to written appeal to the

---

Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to TVA's General Manager. After the filing of such an appeal the General Manager or a representative or representatives designated by him shall conduct a hearing at which both TVA and the Contractor shall be afforded an opportunity to be heard and to offer evidence relating to the dispute. The General Manager or his representative or representatives shall arrive at a decision upon the basis of the evidence presented at the hearing.

The decision of the General Manager or his representative or representatives shall be final and conclusive upon the parties except on questions of law or unless determined by a court of competent jurisdiction to have been fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence; provided, that until such time as an appeal is taken to the General Manager and he (or his representative or representatives) renders a decision, the decision of the Contracting Officer shall govern the respective rights and obligations of the parties as to the matter in dispute and the Contractor shall proceed diligently with the performance of the contract in accordance with said decision; and provided

further, that if no appeal to the General Manager is made within the time and in the manner prescribed above, the decision of the Contracting Officer shall be final and conclusive upon the parties."

4. Patton and TVA recognize that parties may legally agree in advance to be bound by the decision of some person other than the courts in the event that disputes arise; United States v. Gleason, 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284 (1900); Martinsburg and Potomac R. R. Co. v. March, 114 U.S. 549, 5 S.Ct. 1035, 29 L.Ed. 255 (1885); Chicago, Santa Fe and California R. Co. v. Price, 138 U.S. 185, 11 S.Ct. 290, 34 L.Ed. 917 (1891); and that the validity of such a "disputes clause" in government contracts has long been upheld. United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652, 656.

5. The courts have generally held that a complaining party must follow the administrative procedure to adjust a dispute which is subject to arbitration under the "disputes clause" before such party has standing to institute court action. United States v. Joseph A. Holpuch, 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); United States v. Taylor, 333 F.2d 633 (5th Cir. 1964) adhered to on rehearing, 336 F.2d 149 (5th Cir. 1964).

head of the department, 'whose decision shall be final and conclusive upon the parties thereto.' " [6] The court rejected the government's contention that the disputes clause authorized and compelled administrative action with respect to all disputes between the parties in the course of completing the contract. The court said:

"Thus the settled construction of the disputes clause excludes breach of contract claims from its coverage, whether for purposes of granting relief or for purposes of making binding findings of fact that would be reviewable under Wunderlich Act standards rather than de novo. * * * " [7]

And, in answer to the government's argument that the same considerations which initially led to providing an administrative remedy in those situations arising from changes in the drawings and/or specifications of the contract, changed conditions, delays, etc., also support the broader reading of the disputes clauses permitting and requiring administrative fact finding to all disputes arising between the contracting parties, the court said:

" * * * But the coverage of the disputes clause is a matter susceptible of contractual determination, United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256, subject to the limitations on finality imposed by the Wunderlich Act, and one would have expected modification of the disputes clause to encompass breach of contract disputes if the restrictive interpretation of Article 15 was thought unduly to hinder government contracting. * * * " [8]

The case of Bethlehem Steel Corporation v. Grace Line, Inc., 135 U.S.App.D. C. 81, 416 F.2d 1096 (1969) involved a government contract which contained a "disputes clause" covering any dispute arising under the contract which is not disposed of by agreement of the parties to the contract. In rejecting the contention that the subject matter of the dispute came within the coverage of the disputes clause, the court said:

"That phrase—'arising under this contract'—has a lengthy history, throughout which it has commanded widespread acceptance as an unyielding limitation on administrative reference to disputes that can be fully remedied under some stipulation of the contract. As the Supreme Court very recently pointed out, '[t]he "arising under" claims subject to final administrative determination are those claims asserted under other clauses of the contract calling for equitable adjustment of the * * * price or extensions of time upon the occurrence of certain events.' If indeed the Maritime Administration's purpose had been to recast its disputes clause to free it from that constriction, all it had to do was to eliminate the constricting language. Instead it left it in the new formulation of the disputes clause, and we do not think the new first sentence can be understood to vitiate it. The important consideration here, no less than the *Utah Construction*, is that 'the restrictive meaning of the words "arising under this contract" had long since been established when these parties used them,' and upon that meaning the parties were entitled to rely in the absence of some clear indication that the words were to take on a wholly different significance. We think the new first sentence does not import such a modification. The second sentence, we hold, excludes Grace's banana reefer claim unless it is subject to full administrative vindication under some other provision of the contracts." [9]

In an effort to broaden the scope of the "disputes clause" uniformly used in

6. 384 U.S. at 398, 86 S.Ct. at 1548, 16 L. Ed.2d at 646–647.

7. Id., 384 U.S. at 412, 86 S.Ct. at 1555, 16 L.Ed.2d at 655.

8. Id., 384 U.S. at 413, 86 S.Ct. at 1555, 16 L.Ed.2d at 655–656.

9. 416 F.2d at 1102–1103.

its contracts, TVA changed the language of the clause to meet the observations made by the Supreme Court in *Utah,* supra, and the D. C. Circuit in *Bethlehem Steel,* supra. TVA changed the "arising under" provision to read "any dispute arising out of or connected in any way with any obligation of the parties arising out of the performance or nonperformance of the contract whether arising before or after completion of performance, *including disputes as to any alleged violation or breach thereof.*" (Emphasis added). Thus, TVA argues that Patton's action herein seeking a judgment declaring that TVA has anticipatorily breached the contract constitutes a dispute which is within the plain language of the clause, i. e. "including disputes as to any alleged violation or breach thereof".

In answer to the argument, Patton contends that the dispute must not only be one which is covered by the language of the clause, but, the dispute must also be one which is capable of being fully remedied under some·other provision of the contract, citing among others, the cases of United States v. Utah Construction and Mining Company, supra; Bird & Sons, Inc. v. United States, 420 F.2d 1051, 190 Ct.Cl. 426 (1970); and Bethlehem Steel Corporation v. Grace Line, Inc., supra.

In *Bethlehem Steel* the court said:

"And so it is now settled that the fact-disputes clause extends only to controversies redressable by specific provisions in the contract. Stated differently, a fact-dispute is one 'arising under this contract' only when the disputed fact is capable of complete resolution by a procedure specified in the contract. In consequence, claims which are adjustable under contractual provisions must be submitted for the administrative determinations prescribed by the contract, while claims for breach of contract—those not adjustable in that fashion—may be litigated in a court of competent jurisdiction without previous resort to that procedure." [10]

In *Bird* the court said:

"It is settled law that the Disputes Clause applies only 'to the extent complete relief is available under a *specific contract adjustment provision,*' (Citation omitted) [Emphasis added]; that is, some *'other * * * [clause]* of the contract calling for equitable adjustment of the * * * price or extensions of time upon the occurrence of certain events.' (Citation omitted) [Emphasis added]. This principle, enunciated by the Supreme Court, was recently restated by this court in Len Co. and Associates v. United States, 385 F.2d 438, 441–442, 181 Ct.Cl. 29, 36 (1967), as follows:

* * * [I]t is within the parties' power to select their own remedies (subject to the overriding requirements of the Wunderlich Act). (Citations omitted). That choice can, of course, point to administrative determination. If so, and "the contract makes provision for equitable adjustment of particular claims, such claims may be regarded as converted from breach of contract claims to claims for relief under the contract.' (Citations omitted). To the extent that complete relief is available under a specific provision—i. e., the claim is both cognizable under and adjustable by the terms of the contract—such as the currently standard 'Changes', 'Changed Conditions', or 'Inspection' clauses, the controversy arises under the contract and is subject to initial administrative resolution as provided in the normal 'Disputes' article. But *if a fair reading of the particular contract shows that the specific dispute has not been committed to agency decision, the claims are then for a 'pure' breach of contract and are considered de novo in this court.* [Emphasis added]." [11]

In reply to Patton's argument TVA directs the court's attention to several

---

10. 416 F.2d at 1101.

11. 420 F.2d at 1054–1055.

provisions of the contract other than the "disputes clause".

TVA points to the provision of the contract in which Patton agrees to furnish all materials, equipment, etc., necessary to perform the work required by the specifications for the job. The contract sets forth the quantity of work to be performed as 2700 sq. ft. of chipping and cleaning eroded concrete surfaces and 2700 cu. ft. of drilling and setting steel anchors and placing concrete aggregate and intrusion grout. There appears a notation on the page of the contract detailing the work to be performed which states "The quantities shown under items 1 and 2 are estimated and may be exceeded by up to sixty (60) percent. Therefore, bidder must bid on all items". There are four items listed. Item 1 requires a bid on the work of chipping and cleaning eroded concrete surfaces—2700 sq. ft. Item 1a requires a bid on any excess over the quantity shown on Item 1. The same applies to Items 2 and 2a, relating to drilling and setting steel anchors and placing concrete aggregate and intrusion grout.

TVA makes reference to the statement contained in the contract in which Patton states that it has inspected the proposed work personally with divers and TVA representatives. TVA also points out the requirement set out in the Special Conditions of the contract that bidders should inspect and carefully examine the site and acquaint themselves with all existing conditions that may in any way affect the performance of the work. The court's attention is likewise called to the contract provision that a failure to visit and inspect the site of the work by a prospective bidder would be at his own risk.

The provisions of the contract to which reference has just been made, most certainly bear upon and are relative to the question of whether TVA has been guilty of an anticipatory breach of the contract. Do they, however, provide a means by which Patton's claims can be fully redressed, if TVA has, in fact, anticipatorily breached the contract? The provisions can be used by TVA to defend against the claimed breach, but the court cannot see that the provisions have any bearing on or are related in any way to the question of fully redressing the wrong, if any, which Patton might have suffered by the anticipatory breach of the contract by TVA, if such did in fact occur.

The only other provisions of the lengthy and involved contract brought to the court's attention are the ones pertaining to the claims and protests by contractor and changes in the work.

At the time of the execution of the contract the parties estimated that Patton would be required to chip and clean 2700 sq. ft. of eroded concrete surface and drill and set steel anchors and place concrete aggregate and intrusion grout in the aggregate amount of 2700 cu. ft. Patton claims that the quantity of work required by the contract was underestimated by TVA by more than fifty percent and that such gross inaccuracy constituted an anticipatory breach of the contract, thus relieving Patton of any duty to complete the work and giving rise to a claim for damages.

An "anticipatory breach" is defined in 17A C.J.S. Contracts § 472(1) as "one committed before the time has come at which there is a present duty of performance, and it is the outcome of words or acts evincing an intention to refuse performance in the future".

The Mississippi Supreme Court has held that to constitute an anticipatory breach of a contract the refusal to perform must be positive and unconditional. Old Ladies Home Ass'n. v. Hall, 212 Miss. 67, 52 So.2d 650, modified suggestion of error overruled 212 Miss. 67, 54 So.2d 170; Little v. Dalrymple, 242 Miss. 365, 135 So.2d 403.[12]

---

12. The court said in Little v. Dalrymple: "The definition of an anticipatory breach of a contract is one committed before the time has come, when there is

The complaint charges that the work at Kentucky Dam was suspended December 19, 1969 because of high water and extreme weather conditions. At the time of suspension Patton had cleaned 1581.5 sq. ft. of eroded concrete surface, and had drilled and set steel anchors and placed concrete aggregate and intrusion grout amounting to 837.7 cu. ft. The complaint further charges that Patton and TVA thoroughly inspected the stilling basin at that time and mutually concluded that there remained only 175 sq. ft. of the eroded concrete surface on the project to be cleaned and a similar amount of concrete aggregate and intrusion grout to be poured. It became apparent to Patton that the work to be performed under the contract would be less than fifty percent of that originally anticipated. Patton contends there was an anticipatory breach of the contract by TVA, because of the failure of TVA to furnish Patton with work in the quantity set forth in the contract.

The court, at this point, is not concerned with the questions of whether the allegations of Patton's complaint state a claim upon which relief can be granted, or whether there is no genuine issue as to any material fact which would justify the entry of a summary judgment. Neither is the court concerned with the proper disposition of disputes which may arise should the court decide that Patton is entitled to a judgment declaring that TVA has been guilty of an anticipatory breach of the contract.

The narrow question for decision by the court is whether Patton may prosecute this action without first submitting the controversy to arbitration pursuant to the "disputes clause" of the contract.

The "disputes clause" was drafted by TVA and inserted in the contract. It is axiomatic that, as between two reasonable and practical constructions of an ambiguous contractual provision, the provision should be construed less favorably to that party which selected the contractual language. United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224, 235 (1970).

█ The court is of the opinion and so holds that the contract in question does not require Patton to submit the dispute described in the complaint to the Contracting Officer for decision, and, thereafter, to process the dispute through the administrative channels, before bringing this action.

The court is persuaded that Patton is entitled to a judicial determination of the issue.

Laying aside, for the sake of argument, the apparent absence of any contractual provision to which Patton can look for relief, the "disputes clause" contains an express provision that Patton cannot obtain through administrative channels one feature of the relief to which Patton claims he is entitled. If TVA has anticipatorily breached the contract, Patton may treat the contract as rescinded, repudiated and renounced, and is relieved of full performance. 17A C.J.S. Contracts § 472(2) (d). In stating it differently, under the provisions of the "disputes clause" Patton would be required to continue with work under the contract, pending the decision of the General Manager, and, thus, would be deprived of the right to treat the contract as renounced or repudiated by TVA. The relief provided by the contract, in the opinion of the court, is not adequate, assuming Patton is correct in his position.

An appropriate order will be entered and will provide that TVA shall have thirty days within which to answer or otherwise plead in the action.

a present duty of performance, and is the outcome of words or acts evincing an intention to refuse performance in the future. If it does not precede the time of performance—it is not anticipatory. 12 Am.Jur., Contracts, p. 969, Sec. 391." (135 So.2d 405).