PATTON WRECKING AND DEMOLITION CO., Inc., and Patton Bros., Inc., a joint venture, Plaintiffs-Appellees,

v.

TENNESSEE VALLEY AUTHORITY, Defendant-Appellant.

No. 71–2363.

United States Court of Appeals, Fifth Circuit.

Sept. 8, 1972.

---

Robert H. Marquis, Gen. Counsel, Tennessee Valley Authority, Thomas A. Pedersen, Sol., Charles W. Van Beke, Knoxville, Tenn., for defendant-appellant.

Clayton J. Swank, III, J. Murray Akers, Robertshaw, Merideth & Swank, Greenville, Miss., for plaintiffs-appellees.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

INGRAHAM, Circuit Judge:

The issue on this interlocutory appeal is whether a government contractor's suit for a declaratory judgment of the government's asserted anticipatory breach of contract was barred by virtue of the contractor's failure to exhaust the contractually established disputes procedure.

The contract, let after competitive bidding and inspection, was for the resurfacing of one of the Tennessee Valley Authority's dams. The bid invitation was based upon 2700 square feet of chipping and cleaning eroded concrete surfaces and 2700 cubic feet of drilling and setting steel anchors and placing concrete aggregate and intrusion grout. The unit price provided in the contract for each kind of work brought the total estimated contract amount to $197,100. While the contract allowed for upward adjustments of the cost of additional units of work, it was silent on decreases in quantities.

Appellee Patton Wrecking, the successful bidder, undertook and completed a substantial portion of the available work when it discovered that the total amount of work was far less than that specified (approximately 49% of the bid invitation quantity). Patton halted further performance and sought a declaratory judgment that the government's projected failure to supply adequate work constituted an anticipatory breach of contract freeing Patton from further performance on its part and entitling it to damages on the theory of *quantum meruit*. Tennessee Valley Authority an-

swered and asserted Patton's failure to submit the dispute to the contracting officer under the contract's dispute clause.[1]

The district court in an opinion reported as Patton Wrecking and Demolition Co., Inc. v. TVA, 324 F.Supp. 143 (N.D., Miss.1971) sustained Patton's complaint against TVA's motion to dismiss and motion for summary judgment. The district court certified TVA's interlocutory appeal and a panel of this court accepted that appeal. 28 U.S.C. § 1292(b). We reverse and remand.

The district court, after studiously tracing the development of the "standard" dispute clause,[2] found the dispute clause here at issue [for clarity hereafter called "amended" or all disputes clause] to be ambiguous in the scope of the jurisdiction that the parties had contractually conferred upon the contracting officer. The court, therefore, construed the amended dispute clause

1. 16. DISPUTES. Any dispute arising out of or connected in any way with any obligation of the parties arising out of the performance or nonperformance of the contract whether arising before or after completion of performance, including disputes as to any alleged violation or breach thereof, shall be decided by the Contracting Officer on the basis of the contract file and any other facts which he may deem pertinent. The Contracting Officer shall reduce his decision to writing and promptly mail or othwise furnish a copy thereof to the Contractor. Within thirty (30) calendar days from the receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to TVA's General Manager. After the filing of such an appeal the General Manager or a representative or representatives designated by him shall conduct a hearing at which both TVA and the Contractor shall be afforded an opportunity to be heard and to offer evidence relating to the dispute. The General Manager or his representative or representatives shall arrive at a decision upon the basis of the evidence presented at the hearing.

The decision of the General Manager or his representative or representatives shall be final and conclusive upon the parties except on questions of law or unless determined by a court of competent jurisdiction to have been fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence; provided, that until such time as an appeal is taken to the General Manager and he (or his representative or representatives) renders a decision, the decision of the Contracting Officer shall govern the respective rights and obligations of the parties as to the matter in dispute and the Contractor shall proceed diligently with the performance of the contract in accordance with said decision; and provided further, that if no appeal to the General Manager is made within the time and in the manner prescribed above, the decision of the Contracting Officer shall be final and conclusive upon the parties.

2. The standard dispute clause provides: "Article 15. *Disputes.*—

"Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed."

"[N]o provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fradulent [*sic*] or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

"Sec. 2. No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board." 68 Stat. 81, 41 U.S.C. §§ 321–322 (1964 ed.).

See e. g., United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); see also 2 A.L.R. Fed. 691.

against its proponent TVA and *pro tanto* held that the dispute provision was inapplicable when the claim for anticipatory relief was not redressable under some other specific contract article. United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

■ The presence of a "standard" dispute clause in government contracts has a long history. See annotation, Government Contracts—"Dispute" Clause, 2 A.L.R.Fed. 691. In Edward R. Marden Corporation v. United States, 442 F.2d 364 (Ct.Cl., 1971), the court said:

"It is a familiar principle in the law of Government contracts that, to the extent complete relief is available under a specific provision of the contract, a controversy is regarded as being within the standard Disputes clause, *i. e.*, as arising 'under the contract.' Such a controversy is susceptible of initial administrative resolution under the Disputes clause, and the administrative decision is subject to judicial review under the standards of the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1964). Judicial review is strictly limited to the record established in the administrative proceedings. United States v. Carlo Bianchi & Co., 373 U.S. 709, 714, 83 S.Ct. 1409, 10 L.Ed. 2d 652 (1963). A corollary principle is that, to the extent complete relief is not made available under a specific contract provision, a controversy is not subject to administrative determination via the Disputes clause and may be tried de novo in the proper court. Len Co. & Assoc. v. United States, 385 F.2d 438, 442, 181 Ct.Cl. 29, 36 (1967)."

The role and meaning of the "standard" clause has been extensively considered by the Supreme Court in United States v. Utah, *supra*; United States v. Anthony Grace & Sons, 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966) and Crown Coat Front Co. v. United States, 386 U. S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1966). In *Utah* the Supreme Court distinguished between claims "arising under" the contract [contract claims] for which some other contractual article provided avenues for redress and breach of contract claims. In holding administrative remedies available only for contract claims, the Court said:

"Thus the settled construction of the disputes clause excludes breach of contract claims from its coverage, whether for purposes of granting relief or for purposes of making binding findings of fact that would be reviewable under Wunderlich Act standards rather than *de novo*. This is not to say that the Government does not have a powerful argument for construing the disputes clause to afford administrative relief for a wider spectrum of disputes arising between the contracting parties. It can be argued, as the Government persuasively does, that the same considerations which initially led to providing an administrative remedy in those situations covered by such clauses as Articles 3, 4 and 9 of the contract also support the broader reading of the disputes clause permitting and requiring administrative fact finding with respect to all disputes arising between the contracting parties. But the coverage of the disputes clause is a matter susceptible of contractual determination, United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256, subject to the limitations on finality imposed by the Wunderlich Act, and one would have expected modification of the disputes clause to encompass breach of contract disputes if the restrictive interpretation of Article 15 was thought unduly to hinder government contracting. In fact the contracting departments have not rejected the narrower judicial reading of the disputes clause nor attempted any wholesale revision of its language to cover all factual disputes. Instead they have acted to create alternative administrative remedies for some breach of contract claims and to disestablish others by fashioning additional specific adjustment provisions contemplating relief under the con-

tract in specified situations not reached by such provisions as Articles 3, 4 and 9."

United States v. Utah Construction & Mining Co., *supra*, 384 U.S. at 412–413, 86 S.Ct. at 1553. The primacy of the role of administrative resolution of contract claims through the dispute process requires that those remedies be exhausted before suit may be brought. The remedy, however, must be an available one, as the Supreme Court in United States v. Anthony Grace & Sons, *supra*, noted:

> "There can be no doubt that the dispute here over the decision by the Department of the Air Force to cancel respondent's commitments under the bid and letter of acceptability and to retain the deposit is one which the parties contractually provided should be heard and decided by the administrative process. Barring some compelling policy reason to disregard this provision, the contractor should be held to its contractual agreement even at this stage in the litigation.

> It is true that this Court has said on several occasions that the parties will not be required to exhaust the administrative procedure if it is shown by clear evidence that such procedure is 'inadequate or unavailable.' United States v. Joseph A. Holpuch Co., *supra*, 328 U.S. [234,] at 240, 66 S.Ct. at 1003, [90 L.Ed. 1192]; United States v. Blair, *supra*, 321 U.S. [730] at 736–737, 64 S.Ct. 823, 88 L.Ed. 1039. It may be that the contracting officer, H. B. Zachry Co. v. United States, 344 F.2d 352, 170 Ct.Cl. 115, or the Board of Contract Appeals, Southeastern Oil Florida, Inc. v. United States, 115 F.Supp. 198, 127 Ct.Cl. 480, so clearly reveals an unwillingness to act and to comply with the administrative procedures in the contract that the contractor or supplier is justified in concluding that those procedures have thereby become 'unavailable.' Similarly, there may be occasions when the lack of authority of either the contracting officer or the administrative appeals board is so apparent that the contractor or supplier may justifiably conclude that further administrative relief is 'unavailable.' But these circumstances are clearly the exceptions rather than the rule and the inadequacy or unavailability of administrative relief must clearly appear before a party is permitted to circumvent his own contractual agreement." 384 U.S. at 429, 86 S.Ct. at 1542.

This learning was succinctly restated in *Crown Coat, supra*:

> "It is now crystal clear that the contractor must seek the relief provided for under the contract or be barred from any relief in the courts. In United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192, the question was whether a contractor's failure to exhaust the administrative appeal provisions of a government construction contract bars him from bringing suit in the Court of Claims to recover damages. The Court held that it did. According to the Court, the disputes clause

> > 'is a clear, unambiguous provision applicable at all times and binding on all parties to the contract. No court is justified in disregarding its letter or spirit. . . . It creates a mechanism whereby adjustments may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. United States v. Blair, 321 U.S. 730, 735, 64 S.Ct. 820, 823, 88 L.Ed. 1039. This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated as to matters arising under the contract. . . . And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor

can be heard to complain in a court.' 328 U.S. 234, 239–240, 66 S.Ct. 1003.

See also United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039, and United States v. Callahan Walker Co., 317 U.S. 56, 61, 63 S.Ct. 113, 115, 87 L.Ed. 49, where the disputes clause procedures are described as the 'only avenue for relief.' " 386 U.S. at 512, 87 S.Ct. at 1182.

Applying the constructional gloss imparted by *Utah, Grace* and *Crown Coat* to the term "arising under" in the "standard" disputes clause requires that TVA make a facial showing of contract redressability before exhaustion of contractual remedies would bar this suit. But to so apply the "arising under" jurisprudence of *Utah* to this amended disputes clause fails to properly account for the significance of the change in language. In *Utah* the standard disputes clause provided " 'all disputes concerning questions of fact arising under this contract' shall be decided by the contracting officer." The form employed in this case provided "that any dispute arising out of or connected in any way with any obligation of the parties arising out of the performance or nonperformance of the contract, whether arising before or after completion of performance . . . shall be decided by the contracting officer." Indeed as we previously noted, the Supreme Court in *Utah* expected that should expanded jurisdiction under a disputes clause be desired, all that need be done was to amend the contract provision. United States v. Utah, supra, 384 U.S. at 412–413, 86 S.Ct. 1545. The deliberate attempt to expand the scope of jurisdiction under this clause cannot be disregarded as merely ambiguous surplusage. Cf. Bird & Sons, Inc. v. United States, 420 F.2d 1051, 190 Ct.Cl. 426 (1970). The parties to an agreement such as the one at bar have the power to contractually select their own remedies and forum subject to the overriding limitations of the Wunderlich Act, 41 U.S.C. §§ 321, 322. United States v. Gleason, 175

U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284 (1900); Martinsburg & Potomac R.R. Co. v. March, 114 U.S. 549, 5 S.Ct. 1035, 29 L.Ed. 255 (1885). In a different context, *See* M/S BREMEN et al. v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

■ The case of Bethlehem Steel Corp. v. Grace Line, Inc., 135 U.S.App. D.C. 81, 416 F.2d 1096 (1969), contains the key to proper appreciation of the amendment to the "standard" disputes clause. In *Bethlehem* the clause provided in relevant part:

> "Article 36. Disputes—Any action, omission, direction, decision or determination of the Board, the Owner or the Contractor under this contract may be the subject of a dispute. *Any dispute arising under this contract which is not disposed of by agreement of the parties to this contract, shall be decided* by the Chief, Office of Ship Construction, of the Maritime Administration, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor and to the Owner, which decision shall be final and conclusive and shall bind all parties to this contract unless within thirty (30) days from the date of receipt of such copy the Contractor or the Owner appeals from said decision by mailing or otherwise furnishing said Chief, Office of Ship Construction, a written appeal addressed to the Board." (Emphasis supplied.)

In comparing the effect of the change in this form from the "standard" disputes form, the court observed:

> "The factors motivating these alterations of the disputes clause have not been presented to us. Nonetheless, it is clear that the new 1957 clause has in some respects a wider reach than the standard fact-disputes clause construed in *Utah Construction*. Bethlehem maintains that the language '[a]ny dispute arising under this contract' in the second sentence embraces any matter which the first sentence describes as a potential subject of dis-

pute, and compels the adjustment through the administrative machinery of all disagreements between the parties concerning '[a]ny action, omission, direction, decision or determination' stemming from any of the myriad provisions of the contracts. We cannot accept this construction, or attribute to the new first sentence the capability of superimposing on the second a coverage nearly so broad or radical. The first sentence purports to require consideration by the Maritime Administration of *administratively referable* disputes over matters in character either legal or factual, judgmatical or ministerial, or otherwise outside the 'fact' category of the standard disputes clause terminology. But the vital circumstances confronting us here is that the words 'arising under this contract' remain in the second sentence, as they appeared in the old, and their influence on the problem at hand must be weighed with great care. For, despite the specification in the first sentence as to what 'may be the subject of a dispute,' the only type of dispute the second sentence makes mandatorily subject to the administrative procedure is one 'arising under this contract.'

"That phrase—'arising under this contract'—has a lengthy history, throughout which it has commanded widespread acceptance as an unyielding limitation on administrative reference to disputes that can be fully remedied under some stipulation of the contract. As the Supreme Court very recently pointed out, '[t]he "arising under" claims subject to final administrative determination are those claims asserted under other clauses of the contract calling for equitable adjustment of the * * * price or extensions of time upon the occurrence of certain events.' If indeed the Maritime Administration's purpose had been to recast its disputes clause to free it from that construction, all it had to do was to eliminate the constricting language. Instead it left it

in the new formulation of the disputes clause, and we do not think the new first sentence can be understood to vitiate it. The important consideration here, no less than in *Utah Construction*, is that 'the restrictive meaning of the words "arising under this contract" had long since been established when these parties used them,' and upon that meaning the parties were entitled to rely in the absence of some clear indication that the words were to take on a wholly different significance. We think the new first sentence does not import such a modification. The second sentence, we hold, excludes Grace's banana reefer claim unless it is subject to full administrative vindication under some other provision of the contracts." 416 F.2d 1102–1103.

It is patent that the contract awarded on April 10, 1969, to Patton Wrecking was drafted in appreciation of the *Utah* and *Bethlehem* decisions. The "amended" or all disputes clause avoided the limitation of "arising under" clauses discussed by *Utah, supra,* and by its own terms conferred breach of contract jurisdiction to the TVA's general manager, subject to review under the Wunderlich Act. United States v. Utah Construction and Mining Co., *supra*; United States v. Moorman, 338 U.S. 457, 70 S. Ct. 288, 94 L.Ed. 256 (1950).

The district court alternatively considered whether Patton could obtain relief through administrative channels, stating:

"Laying aside, for the sake of argument, the apparent absence of any contractual provision to which Patton can look for relief, the 'disputes clause' contains an express provision that Patton cannot obtain through administrative channels one feature of the relief to which Patton claims he is entitled. If TVA has anticipatorily breached the contract, Patton may treat the contract as rescinded, repudiated and renounced, and is relieved of full performance. 17A C.J.S. Contracts § 472(2)(d). In stating it dif-

ferently, under the provisions of the 'disputes clause' Patton would be required to continue with work under the contract, pending the decision of the General Manager, and, thus, would be deprived of the right to treat the contract as renounced or repudiated by TVA. The relief provided by the contract, in the opinion of the court, is not adequate, assuming Patton is correct in his position." 324 F.Supp. at 150.

The district courts, since the merger of law and equity practice in federal courts, may consider where the equities of the case lie in construing contract language. The court moreover may determine whether the contractual language provides a means of settling the dispute. The concept of the redressability of a dispute "arising under" the contract however does not apply to this dispute under the amended contract language. Here the clause expressed refers to "disputes . . . arising out of performance or nonperformance of the contract, whether arising before or after completion of performance, including disputes as to any alleged violation or breach thereof . . . . " The Court of Claims in Morrison-Knudsen Co. v. United States, 345 F.2d 833, 170 Ct.Cl. 757, stated the controlling principle as follows:

"It is acknowledged by plaintiff that complete relief on this claim was available under the terms of the contract. The claim was so presented to and treated by the IBCA. Nevertheless, plaintiff now contends that it is a claim for breach of contract. In the broad sense, every failure by the government to comply with its contractual obligations is a breach of contract; this is the basis of our jurisdiction, 28 U.S.C. § 1491. In this context, a claim based on the inadequacy of an equitable adjustment would be a breach of contract. But we know that this is not so. United States v. Calla-

han Walker Construction Co., 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49 (1942). Most government contracts, either by clauses contained therein or by regulations which form a part of the contract, prescribe specific remedies for certain breaches of the contract by the government.[2] In such instances, the

2. It has often been argued that the failure to order the change and grant an equitable adjustment, when a change in fact has been required by the contracting officer, constitutes a breach of contract. In some instances, the boards have ordered the contracting officer to make an adjustment, treating the requirement of the contracting officer as a constructive change. See Noonan Constr. Co., 1963 B.C.A. 18282 (ASBCA 1963); Aero Service Corp., 58–1 B.C.A. 6355 (ASBCA 1958). This court has treated similar claims as a change or a changed condition and granted an equitable adjustment. Jack Stone Company v. United States, 344 F.2d 370, [170 Ct.Cl. 281,] April 16, 1965; E. H. Sales, Inc. v. United States, 340 F.2d 358, [169 Ct.Cl. 269] (1965); Hoffman v. United States, 340 F.2d 645, [166 Ct.Cl. 39,] May 15, 1964.

procedure specified in the Disputes clause must be followed while work is continued, lest the contractor be denied a remedy in this court for failure to pursue his administrative remedies. Therefore, where complete relief is available to the contractor under the provisions of the contract on a claim arising under the Disputes clause, the action is not one for such a breach of the contract that entitles either party to a de novo trial on the factual questions decided. We think the Supreme Court's decision in Bianchi compels the application of these rules even when the major issue to be decided is a question of law, as well as when the decision rests upon mixed questions of law and fact."

The judgment of the district court is reversed and remanded with directions to enter an order dismissing the complaint.