REGIONAL TRANSPORTATION AUTHORITY, Plaintiff,

v.

GRUMMAN FLXIBLE CORPORATION, Defendant.

No. 81 C 6974.

United States District Court, N. D. Illinois, E. D.

Feb. 9, 1982.

Robert Bell, Jr., Johnson, Cusack, Bell, O'Halloran & Demaret, Ltd., Chicago, Ill., for plaintiff.

Robert L. Graham, Jenner & Block, Chicago, Ill., P. David Richardson, Francis J. O'Toole, Fried, Frank, Harris, Shriver & Kampelman, Washington, D. C., for defendant.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Regional Transportation Authority ("RTA") sues Grumman Flxible Corporation ("Flxible") for the sale of 205 allegedly defective buses. RTA charges the buses had to be removed from service, causing RTA to incur otherwise unnecessary costs

of (1) storage, (2) security services and (3) leasing replacement buses to provide public transportation during the repair period. Flxible has moved to dismiss. For the reasons stated in this memorandum opinion and order Flxible's motion is granted.[1]

*Exhaustion of Administrative Remedy*

■ Section 2.17 of the Flxible-RTA sales contract (the "Agreement") provides:

Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the contractor.

Flxible argues RTA's complaint involves an "issue of fact arising under the contract" so that RTA must first exhaust the Agreement's administrative remedy before it can file a court action.

This case differs from the normal contract interpretation problem of construing unique language chosen by the parties. Here Section 2.17 (the "disputes clause") is a standard provision employed in government contracts for at least 30 years. Many courts including the Supreme Court have examined the scope of the disputes clause, providing this Court with clear guidance to its proper application.

In its definitive reading of the disputes clause, *United States v. Utah Construction Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642, (1966), the Supreme Court distinguished two types of contract-related disputes. One kind is specifically anticipated and provided for in a contract. For example "when the contract makes provision for equitable adjustment of particular claims, such claims may be regarded as converted from breach of contract claims to claims for relief under the contract." *Id.* at 404 n.6, 86 S.Ct. at 1551 n.6. But any claim "not redressable under specific contract adjustment provisions" is termed a "breach of contract claim" and not subject to the dis-

putes clause. *Id.* at 404–05 n.6, 86 S.Ct. at 1551–52 n.6. Another court, *Bethlehem Steel Corp. v. Grace Line, Inc.*, 416 F.2d 1096, 1101 (D.C.Cir.1969), has summed up the distinction as follows:

A fact dispute is one "arising under this contract" only when the disputed fact is capable of complete resolution by a procedure specified in the contract. In consequence, claims which are adjustable under contractual provisions must be submitted for the administrative determinations prescribed by the contract, while claims for breach of contract—those not adjustable in that fashion—may be litigated in a court of competent jurisdiction without previous resort to that procedure.

Application of that dichotomy here leads to the conclusion that RTA's claim is within the disputes clause. Agreement Part IV ("Warranty Provisions") affords an extensive warranty for the complete coach (¶ 1.1.1) as well as many subsystems and components (¶ 1.1.2). It goes on to deal at length with Flxible's duty to repair any warranty-covered defects. For example:

(1) Repairs must begin within 10 working days after Flxible receives notice of a defect (¶ 2.2).

(2) Flxible must provide spare parts and tools at its own cost (¶ 2.2).

(3) RTA can require Flxible to remove the buses from RTA property during the repairs (¶ 2.2).

(4) If a widespread defect ("fleet defect") occurs Flxible must undertake a program reasonably designed to prevent the recurrence of such a defect (¶ 1.6.1).

There is more, but that partial listing demonstrates that the parties *anticipated* the need to repair defective buses and specifically provided for such a situation in the Agreement. In *Utah Construction* terms, RTA's claim appears "redressable under specific contract adjustment provisions."[2] Thus the disputes clause requires that RTA first exhaust its administrative remedy before filing suit.

---

1. This opinion also deals with a collateral dispute stemming from Flxible's motion.

2. This Court intimates no opinion as to whether RTA's claim *actually* involves a warranty defect or whether, if so, the Agreement provides an exclusive remedy (Agreement ¶ 1.1 states

■ It is true that some courts have simply stayed proceedings covered by a disputes clause, *Compare, Bethlehem Steel Corp. v. Grace Line, Inc.*, 416 F.2d 1096, 1109 (D.C.Cir.1969) (proceeding stayed), *with, Patton Wrecking and Demolition Co. v. TVA*, 465 F.2d 1073, 1080 (5th Cir. 1972) (action dismissed). But this Court finds dismissal without prejudice the more appropriate procedure, for the administrative decision may well moot the need for this lawsuit or at least radically alter its contours. RTA will in no way be harmed by a dismissal without prejudice.[3]

### Attorneys' Fees and Expenses

■ One distressing contretemps has grown out of Flxible's motion. Its reply brief was due Friday January 15, 1982, a time that by chance immediately followed an immobilizing snowstorm in Washington, D. C., where Flxible's lead counsel offices.[4] Washington counsel was physically unable to travel to his office to complete the brief for a timely filing.

Local counsel telephoned RTA's counsel Robert Bell, Jr., asking whether he would agree to a four-day extension for filing (to Tuesday January 19). Bell twice refused (after the initial call from a Jenner & Block associate, one of the partners telephoned to renew the request),[5] forcing Flxible's Chicago counsel to prepare and serve a notice of motion and appear before this Court for an extension—at which motion call Bell did not choose to appear and this Court of course granted the extension. At this Court's suggestion Flxible's Chicago counsel has requested attorneys' fees and expenses.

Bell continues to show the same myopic view of the matter that caused the needless effort in the first place, characterizing the issue as whether anyone may be forced to stipulate to an extension. That is not the point. What is rather involved is the responsibility of a lawyer in dealing with his fellow lawyer. It should scarcely be necessary to repeat what every lawyer is expected to know and live by, as succinctly put in the Code of Professional Responsibility:

> DR 7–101(a)—A lawyer shall not intentionally (1) fail to seek the lawful objectives of his client through reasonably available means permitted by law and the disciplinary rules ... however, such "reasonably available means" do not include (A) refusing to accede to reasonable requests of opposing counsel which do not prejudice the rights of his client....
>
> EC 7–38—A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, settings, continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of his client.

When Bell later did show up in Court on the motion for taxation of fees, his explanation of his conduct was that his client would not agree to the extension, so he did not. That explanation may or may not be accurate (from the Jenner & Block affidavit it appears that Bell refused on the initial telephone call, which would belie his later explanation). But in any case the thrust of the Code is that such a decision—certainly in the circumstances here—is for the lawyer and not for the client at all. What is perhaps as troublesome as the origin of the matter is that Bell's response to the motion

---

that its warranties "are in addition to any statutory remedies or warranties," also a question as to which no opinion is expressed). Indeed it is precisely the point of this opinion that the administrative agency must first decide those very questions.

3. It is therefore unnecessary to reach Flxible's separate ground for dismissal of Counts III, IV and V. But because the action may conceivably return, the Court will state its view that RTA clearly seeks relief for economic loss here. On that score, see this Court's recent discussion of the recovery of such losses in tort ac-

tions, *Slate Printing Co. v. Metro Envelope Co.*, 532 F.Supp. 431 (N.D.Ill.1982).

4. To comply with this District Court's General Rule 7(a), Flxible's lead counsel designated Chicago counsel for service of papers. Briefing however was done by lead counsel in Washington.

5. Flxible's brief was the final brief on the motion, so there was no conceivable way in which RTA's counsel could have been affected by the extension.

for fees, *after* having had the Code provisions called to his attention, remained of the view that his conduct was justified.

It is a truism that a commission and a uniform may make someone an officer, but not an officer and a gentleman. Apparently the same may be said of a license to practice law. All that this Court can do is to relieve Flxible of a burden in unjustly-caused attorneys' fees and expenses that it should not have been required to incur and should not be required to bear. In accordance with 28 U.S.C. § 1927 the Court determines that:

(1) RTA's counsel Robert Bell, Jr. has "multiplied the proceedings in [this] case unreasonably and vexatiously."

(2) Flxible's attorneys' request for added fees and expenses in connection with the original motion, and fees in connection with the Court's request, is reasonable in amount.

Robert Bell, Jr. is ordered to pay the sum of $487.50 to Jenner & Block on or before February 15, 1982.

### Conclusion

This action is dismissed without prejudice. RTA's counsel is ordered to comply with the attorneys' fees section of this opinion.