**BIRD & SONS, INC.**
v.
**The UNITED STATES.**
**No. 190–69.**

United States Court of Claims.
Jan. 23, 1970.

Dennis M. Flannery, Washington, D. C., atty. of record, for plaintiff; Max O. Truitt, Jr. and Wilmer, Cutler & Pickering, Washington, D. C., of counsel.

Judith A. Yannello, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION TO DISMISS PETITION

COWEN, Chief Judge.

This case comes before the court on the defendant's motion to dismiss on the grounds that plaintiff's petition states claims sounding primarily in tort, and the court is thus without jurisdiction to grant relief; that, assuming plaintiff's claims are cognizable by this court, the claims were redressable under the contract, and plaintiff failed to exhaust the administrative remedies provided for in the contract; and that by "electing" to pursue its remedies under the Foreign Claims Act [10 U.S.C. § 2734 (1964), *as amended* (Supp. IV, 1969)], and not those provided for in the contract, plaintiff waived its right to seek relief based on the contract in this court.

The facts necessary for the disposition of this motion are as follows: On February 21, 1967, plaintiff Bird & Sons, Inc. [hereinafter "Bird & Sons"], a Washington corporation doing business in Thailand, and the defendant, acting through the Bangkok Area Procurement Office, USAF Military Purchase Agency, entered into Contract No. F62272–67–C–0269, in the amount of $7,038, for the lease of a transit mixer truck, with operator and helper ($78.20 per day for a period of 90 days). The Air Force intended to use the truck to effect the delivery of wet concrete to a variety of construction sites at the U-Tapao Airfield in Thailand.

The contract contained the standard Disputes clause and provided that: Bird & Sons would be responsible for all maintenance and repairs to the truck "other than that caused by abuse or neglect on the part of the Government" (clause E); no rent would accrue for any period during which the vehicle was unusable because of Bird & Sons' failure "to render services in connection with [the] operation and maintenance of * * * equipment" (clause D); and

Except for reasonable fair wear and tear, the Government agrees to return the rented property in as good condition as when received; provided however, if the rented property is operated by an employee of the Contractor, the Government shall not be liable for damage to the rented property incident to such operation. (clause J)

From February 28, 1967, the date contract performance commenced, to May 11, 1967, the "operator" designated by Bird & Sons operated the vehicle under the supervision of Air Force employees. On May 11, 1967, however, the operator failed to report to work. Plaintiff alleges that in his stead the designated "helper" was either directed or negligently permitted by the defendant to operate the truck. The truck drum was loaded with wet concrete for delivery to an area of the U-Tapao Airfield which could only be reached by turning from a main road, with soft and unimproved shoulders, onto a narrow access road. While negotiating the turn, the helper drove onto the shoulder of the main road; the shoulder gave way, and the vehicle overturned into a large water-filled ditch. The wet concrete in the truck drum hardened, and thereafter the vehicle could not be brought back into service under the contract. Plaintiff further alleges that the defendant was negligent in not attempting to remove the wet concrete from the truck drum, and in failing to give plaintiff prompt notice of the accident.

On October 3, 1967, plaintiff filed a formal claim, in the amount of $16,632, with the claims officer at the Air Force Bangkok Area Procurement Office. Plaintiff made several allegations of negligence on the part of Air Force personnel and asked that its claim be "processed through proper USAF channels." After submitting standard claims forms, at the request of Claims Officer Charles T. Smallwood, Captain, USAF, Headquarters 631st Combat Support Group (PACAF), APO San Francisco 96303, to

whom plaintiff's claim had been forwarded for processing, plaintiff was advised that its claim had been assigned claim number PFB68/6836/FS and forwarded to the Headquarters, 13th Air Force, APO San Francisco 96274, "as a matter within their jurisdiction." By letter of March 25, 1968, from Joseph P. Hochreiter, Deputy Administrative Assistant to the Secretary of the Air Force, plaintiff was informed that its claim had been reviewed by the Secretary under the provisions of the Foreign Claims Act,[1] and was denied. Deputy Hochreiter noted: "This is the final administrative action that may be taken by the Air Force on this claim."

On April 23, 1968, Bird & Sons requested the Secretary of the Air Force to reconsider its claim. By letter of May 13, 1968, from Deputy Hochreiter, the denial was reaffirmed. Again Deputy Hochreiter noted: "The Foreign Claims Act makes no provision for any further administrative action by the Air Force on this claim."

On April 2, 1969, plaintiff filed its petition in this court. Plaintiff contends that the defendant breached the contract by causing or permitting the truck to be used in a manner not contemplated by the contract, by failing to return the vehicle in "as good condition as when received" in accordance with clause J of the contract,[2] and by failing to repair the damages resulting from the accident as required by clause E of the contract. Plaintiff seeks damages in the amount of $16,632.

## I

The defendant first argues that plaintiff proceeded "primarily in tort" in its pursuit of relief under the Foreign Claims Act, and that to the extent plaintiff's petition sounds in tort, this court is without jurisdiction to grant relief.

■ It is, of course, true that most[3] tort claims are outside of the jurisdiction of this court. Miraglia v. United States, 141 Ct.Cl. 664, 666 (1958), and cases cited therein. 28 U.S.C. § 1491 (1964) [the Tucker Act] empowers the court to

* * * render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any

1. 10 U.S.C. § 2734, *as amended*, (Supp. IV, 1969), in pertinent part, provides:
" * * * To promote and maintain friendly relations through the prompt settlement of meritorious claims, the Secretary concerned or any officer designated by him may, under such regulations as the Secretary may prescribe, appoint one or more claims *commissions*, each composed of one or more commissioned officers of the armed forces under his jurisdiction, to settle and pay any claim for not more than $15,000, for—
(1) damage to, or loss of, real property of any foreign country or of any political subdivision or inhabitant of a foreign country, including damage or loss incident to use and occupancy;
(2) damage to, or loss of, personal property of any foreign country or of any political subdivision or inhabitant of a foreign country, including property bailed to the United States; or
(3) personal injury to, or death of, any inhabitant of a foreign country; if the damage, loss, personal injury, or death occurs outside the United States, or the Territories, Commonwealths, or possessions and is caused by, or is otherwise incident to noncombat activities of, the armed forces under his jurisdiction, or is caused by a member thereof or by a civilian employee of the military department concerned or the Coast Guard, as the case may be."

2. Clause J also provides that "if the rented property is operated by an *employee* of the Contractor, the Government shall *not* be liable for damage to the rented property incident to such operation." [Emphasis added] [*See* full text of clause J, *supra*]. Plaintiff contends that the "employee" to which the clause refers was, in light of the parties' understanding at the time the contract was entered into, the "operator" designated by plaintiff, and that its claims therefore do not come within the ambit of this proviso. This contention is opposed by the defendant. However, this issue, as well as the other issues of fact and law relating to the parties' agreement and contract performance, need not be decided at this juncture.

3. *But see* 28 U.S.C. § 1504 (1964).

regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not sounding in tort*. [Emphasis added]

However, where an alleged "negligent" act constitutes a breach of a contractually created duty, the Tucker Act does not preclude relief. "[A]n action may be maintained in this court which arises primarily from a contractual undertaking regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract." Chain Belt Co. v. United States, 115 F.Supp. 701, 711–712, 127 Ct.Cl. 38, 54 (1953). *See also* Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 395, 59 S.Ct. 516, 83 L.Ed. 784 (1939); United States v. Huff, 165 F.2d 720, 725 (5th Cir.1948). It is thus important to examine the instant contract.

■ As noted earlier, in clause J of the contract, the defendant agreed "[e]xcept for reasonable fair wear and tear, * * * to return the rented property in as good condition as when received"; in clause E of the contract, the defendant assumed liability for all maintenance and repairs to the truck caused by its "abuse or neglect." Clearly, the breaches of contract plaintiff's petition sets forth are the alleged result of the defendant's alleged failure to carry out its contractual obligations in accordance with these provisions. Plaintiff's claims are thus cognizable by this court.

## II

Next, the defendant argues that plaintiff is precluded from seeking judicial relief since it failed to exhaust the administrative remedies provided for in the contract. According to the defendant, plaintiff's claims were redressable under the contract. It argues that even if a complete administrative remedy requires a price adjustment provision in addition to a Disputes clause, in the circumstances of this case, clauses E and J of the instant contract, heretofore discussed, and clause F ("Payment"), meet this requirement. Defendant maintains that these clauses were designed to bring claims for damages to equipment under the contract and subject to the Disputes clause.

■ It is settled law that the Disputes clause applies only "to the extent complete relief is available under a *specific contract adjustment provision*," United States v. Utah Constr. & Mining Co., 384 U.S. 394, 402, 86 S.Ct. 1545, 1550, 16 L.Ed.2d 642 (1966) [Emphasis added]; that is, some *"other * * * [clause]* of the contract calling for equitable adjustment of the * * * price or extensions of time upon the occurrence of certain events." Crown Coat Front Co. v. United States, 386 U.S. 503, 506, 87 S.Ct. 1177, 1179, 18 L.Ed.2d 256 (1967) [Emphasis added]. *See* Morrison-Knudsen Co. v. United States, 345 F.2d 833, 170 Ct.Cl. 757 (1965). This principle, enunciated by the Supreme Court, was recently restated by this court in Len Co. and Associates v. United States, 385 F.2d 438, 441–442, 181 Ct. Cl. 29, 36 (1967), as follows:

> * * * [I]t is within the parties' power to select their own remedies (subject to the overriding requirements of the Wunderlich Act). United States v. Carlo Bianchi & Co., 373 U.S. 709, 713, 715–718, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 428–429, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966); United States v. Utah Constr. & Mining Co., *supra,* 384 U.S. at 402–407, 415–418, 86 S.Ct. 1545; New York Shipbuilding Corp. v. United States, * * * [180 Ct. Cl. 446, 463–464, 385 F.2d 427, 437–438 (1967)]. That choice can, of course, point to administrative determination. If so, and "the contract makes provision for equitable adjustment of particular claims, such claims may be regarded as converted from breach of contract claims to claims for relief under the contract." United States v. Utah Constr. & Mining Co., *supra,* 384 U.S. at 404 n. 6, 86

S.Ct. at 1551; see Morrison-Knudsen Co. v. United States, *supra*, 345 F.2d at 837, 170 Ct.Cl. at 763–764. To the extent that complete relief is available under a specific provision—*i.e.*, the claim is both cognizable under and adjustable by the terms of the contract—such as the currently standard "Changes", "Changed Conditions", or "Inspection" clauses, the controversy arises under the contract and is subject to initial administrative resolution as provided in the normal "Disputes" article. But *if a fair reading of the particular contract shows that the specific dispute has not been committed to agency decision, the claims are then for a "pure" breach of contract and are considered de novo in this court.* [Emphasis added]

Again, therefore, it is essential to examine the terms of the contract.

█ The instant contract contains, in addition to clauses E and J, clause F, which provides:

PAYMENT:

A. Billing for services performed under this contract will be made on a calendar month basis. Partial calendar months at the beginning or end of the contract period may be covered by separate invoices or may be combined with succeeding or preceding month, as appropriate.

B. Invoicing will reflect the total days times the daily rate for the total billing period. Deductions resulting from application of the clause entitled "Rental" or "Condition of the Rented Property" will be shown as separate line items on the invoice.

C. Invoices will be prepared in four (4) copies and in the English language.

Neither clause E nor clause J, which simply set forth the defendant's liability for all maintenance and repairs to the truck caused by its "abuse or neglect," and the defendant's agreement to return the vehicle in "as good condition as when received," save for reasonable wear and tear, establish procedures for the equitable adjustment of the contract price to compensate plaintiff for damages resulting from their breach by the defendant. That these clauses are "not cast in terms of contract price adjustment is the strongest indication, under the reasoning of *Utah*, that the parties did not intend that liability * * * [would] be a matter for administrative disposition under the Disputes clause, but rather that it was a matter for judicial determination under applicable rules of the law of damages." *Len Co., supra*, 385 F.2d at 451 n. 18, 181 Ct.Cl. at 51 n. 18, quoting Moran Towing & Transport Co., 66–2 B.C.A. ¶ 6027, at 27,852 (No. 10681) (dissenting opinion of Mr. Spector). Furthermore, clause F is totally unrelated to clauses E and J. The only price adjustment it provides for is the *downward* adjustment of the contract price, in accordance with clauses D and H,[4] to reflect days when the truck was

---

4. Clause D provides:
  "RENTAL
  "The Government agrees to pay rent for the property at the rental specified herein. Rental will be on a daily basis per vehicle. No rent shall accrue with respect to any property furnished by the Contractor which the Contracting Officer determines is not of satisfactory quality or in good operating condition under the terms of the clause 'Condition of the Rented Property', unless and until such property is replaced or the defect or defects corrected. No rent shall accrue with respect to any property during any period when property is unserviceable or during any period when such property is unusable as a result of failure of the Contractor to render services in connection with expiration and maintenance of the equipment. A vehicle day as used in this contract will mean a ten (10) hours work day."
  Clause H provides:
  "CONDITION OF THE RENTED PROPERTY:
  "The Contractor shall furnish rented property which is of good quality and in first class operating condition, and the Government shall promptly inspect and accept or reject said · property. If the Contracting Officer determines that the rented property furnished hereunder is not of satisfactory quality or in good operating condition, the Contractor shall

"unusable" as a result of plaintiff's failure to render services in connection with its operation and maintenance, or when it was determined by the contracting officer not to be of "satisfactory quality or in good operating condition."

The cases the defendant cites to support its contention that plaintiff's claims are redressable under the contract are distinguishable from the instant case. In Schlesinger v. United States, 383 F. 2d 1004, 1007, 181 Ct.Cl. 21, 27 (1967), this court held that claims regarding alleged erroneous price discounts were redressable under the contract, despite the fact that there was no clear language to that effect in the contract, because the "settled administrative practice" was to subject such claims to the disputes mechanism. Surely there is no such practice with respect to the damage claims made by plaintiff. In Emerson Electric Co. v. United States (No. 327–68) still pending before the court, Commissioner Arens, by an order dated July 8, 1969, denied the plaintiff's request for a trial de novo of a specified claim under a contract with the United States Air Force, Aeronautical Chart and Information Center, for the continuous updating of loose-leaf flight control publications. (Plaintiff's request for review of the commissioner's order was denied by the court on October 31, 1969.) In that case, the plaintiff first submitted its claim to the contracting officer, and then to the Armed Services Board of Contract Appeals. The plaintiff contended that the defendant breached the contract by not paying the contract unit price for work allegedly required by the contract and duly performed. The "Payments" clause, in the special circumstances there present, appeared to afford the relief plaintiff requested. Similarly, in United States v. N. A. Degerstrom, Inc., 408 F.2d 1130 (9th Cir.

1969), the plaintiff first submitted its claims to the contracting officer. The contracting officer concluded that he lacked jurisdiction over the plaintiff's claims and that the plaintiff would be required to proceed under the Federal Tort Claims Act. The Government moved to dismiss the plaintiff's action under the Federal Tort Claims Act in the district court on the grounds that the plaintiff had failed to exhaust its administrative remedies. The court held that the contracting officer's decision that he lacked jurisdiction to process the claim was final and that the Government was bound by it.

Finally, in United States v. Peter Kiewit Sons' Co., 345 F.2d 879, 883 (8th Cir. 1965), factually similar to the instant case, the Eighth Circuit noted that "the disputes clause * * * [covers] *any* disputes concerning a question of fact arising under the contract, whether it was by reason of damage sustained by the [rented] equipment through the acts of the government, its officers, agents or employees or because of failure to return the equipment in good working order in accordance with the 'implied duty of a lessee "not to commit waste or suffer it to be committed" * * * and of a bailee not to neglect "to exercise ordinary care and skill" ', * * *." [Emphasis in original] However, that decision was rendered before the Supreme Court's decision in *Utah, supra,* which specifically rejected this view, and is thus of no precedential value.

We hold, therefore, that since plaintiff's claim is for unliquidated damages not redressable under any provision of the contract, plaintiff has already exhausted all the administrative remedies that were available to it. *See* Ekco Products Co. v. United States, 312 F.2d 768, 160 Ct.Cl. 75, 84 (1963).

promptly replace same upon receipt of written notice of such determination by the Contracting Officer. If the Contractor fails to replace the rented property in accordance with the determination of the Contracting Officer the Government may: (i) by contract or otherwise re-

place or correct such property and charge to the Contractor the cost occasion [sic] the Government hereby; or (ii) terminate the contract for default as provided in the clause of this contract entitled 'Default'."

### III

Finally, the defendant contends that by "electing" to pursue its remedies under the Foreign Claims Act, and not those provided for in the contract, plaintiff waived its right to seek relief based on the contract in this court. The short answer to this contention is that the Foreign Claims Act provides an *ex gratia* remedy which does not preclude later judicial relief. This is indicated by the Air Force regulations implementing the Act, 32 C.F.R. § 842.-52(a) (1969):

> * * * Since the Foreign Claims Act provides an ex gratia remedy, it should be broadly construed in the light of its purpose. If view of its expressed intent to promote and maintain friendly relations with inhabitants of foreign countries by expeditious settlement of meritorious claims, the United States must accept responsibility for almost all damage caused by members and employees of its armed forces. Some applicable acts and omissions are those which are criminal, negligent, willful, wrongful, and mere mistakes of judgment. Cause and merit are the primary criteria in determining applicability of the Act. Proof of fault is required only to the extent necessary to show that the claim is meritorious.

Moreover, as noted earlier, when plaintiff filed its claim with the Air Force claims officer, it asked that it be "processed through proper USAF channels."[5] To the extent, therefore, that there was an election of remedies, it would appear to have been made for plaintiff by the defendant.

Since plaintiff's petition states breach of contract claims for unliquidated damages that are not redressable under the contract, the case is remanded to the commissioner for the trial of any factual issues, and for the determination of the issues of fact and law. The defendant's motion is denied.

---

5. The defendant contends that plaintiff's having first submitted its claim to the Air Force claims officer at the office through which the contract was issued and not the contracting officer, is a further indication that prior to the instant litigation plaintiff considered the claim to be "one not purely in contract." In light of our conclusion that plaintiff is not held to an election of remedies, however, we need not reach this contention.