## S. J. GROVES & SONS COMPANY

v.

## The UNITED STATES.

### No. 480–80C.

United States Court of Claims.

Sept. 23, 1981.

Donald E. Phillipson, Denver, Colo., atty. of record, for plaintiff. Theodore T. Davis, S. J. Groves & Sons Co., Minneapolis, Mn. and Davis, Graham & Stubbs, Denver, Colo., of counsel.

John W. Showalter, Washington, D. C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant.

Before NICHOLS, KUNZIG, and SMITH, Judges.

## ON DEFENDANT'S MOTION TO DISMISS

EDWARD S. SMITH, Judge:

On May 2, 1981, we issued an order in this contract dispute, dismissing the petition without prejudice to plaintiff's rights under the Wunderlich Act,[1] and in which order we stated that this opinion would follow.

### I.

Pursuant to a contract dated July 15, 1974, between plaintiff, S. J. Groves & Sons Company (Groves), and the Bureau of Reclamation (bureau), United States Department of the Interior (Interior), Groves constructed a large pipeline as part of the Currant Creek Dam project. The purpose of the pipeline was to carry water from the impoundment at the Currant Creek Dam to the inlet portal of the Currant Creek Tunnel. Beginning in 1974, the pipeline was constructed of precast reinforced concrete pressure pipe sections, and was completed in the fall of 1976. During the period of construction the bureau supervised, inspected, tested, and approved the supplier's pipe fabrications and Groves' installation work.

Plaintiff began test-filling the pipeline in March 1977. Leaks were observed and, upon inspection, numerous cracks and leaky joints were found in the pipeline.

A series of meetings was held between the parties during which Groves took the position that the failures resulted from faulty specifications which had been called to the contracting officer's attention during construction. Also, on two occasions Groves requested a decision on responsibility for the failures. After an independent evaluation by the bureau, Groves sent a letter to the bureau on December 5, 1978, requesting for a third time a decision on responsibility. On January 5, 1979, the bureau responded by letter stating that no part of the pipeline was acceptable and that Groves was responsible for replacement or repair. The letter stated further:

1. 41 U.S.C. §§ 321–22 (1976).

Acceptable corrective measures include any one of the following: (1) removal and replacement of the entire pipeline to specifications lines, grades, and requirements, (2) installation of a mortar lined steel pipe inside the existing pipe * * * or (3) * * *.[2]

You are directed to proceed immediately with one of the three alternates * * *. * * *

Plaintiff sought injunctive and declaratory relief from the January 5, 1979, directive by filing suit in the United States District Court for the District of Colorado on February 7, 1979. On February 23, 1979, the contracting officer issued his findings of fact and decision, specifying the alleged failures on the part of plaintiff and repeating the directive and statements contained in the bureau's January 5, 1979, letter. On March 23, 1979, the decision of the contracting officer was appealed by plaintiff to the Interior Board of Contract Appeals (board).

Various extensions of time for plaintiff to file a complaint were allowed by the board.

On May 13, 1980, the bureau sent plaintiff a cure notice stating that if no response were received within 10 days, the Government might consider termination of the contract for default. On June 5, 1980, plaintiff responded to the bureau that it was prepared to commence appropriate action under alternatives (1) or (2) of the February 23, 1979, directive, at the bureau's election. On June 11, 1980, the bureau directed plaintiff to proceed under alternative (2), i. e., by installation of the steel liner.[3] Plaintiff is currently engaged in carrying out that directive.

Following the several extensions of time allowed by the board, inter alia, to permit plaintiff to seek judicial resolution of the case, that body ultimately dismissed the appeal before it on July 31, 1980, without prejudice to reinstatement by either party at any time prior to July 31, 1981.

On August 8, 1980, the district court issued an order holding that it had no jurisdiction over plaintiff's claim, which order, upon plaintiff's motion, the district court modified to transfer the case to us.[4]

Plaintiff's first amended petition here alleges five claims for relief: estoppel, breach of contract, cardinal change, rescission and restitution, and return of retainages. Defendant contends that plaintiff has failed to exhaust its administrative remedies. We now set forth our reasons for granting, in our order dated May 2, 1981, defendant's motion to dismiss, without prejudice to plaintiff's rights under the Wunderlich Act.

II.

Plaintiff contends defendant has breached its contract, asserting that it undertook to construct for defendant, not just any pipeline, but a pipeline according to plans and specifications warranted by defendant. Plaintiff argues that defendant's directives, after the first filling of the pipeline, without providing change orders or reimbursement, constituted a major breach of contract of implied warranty and other implied and express covenants and promises. Defendant points out that plaintiff did not raise these arguments until the filing herein of plaintiff's opposition to the motion to dismiss, and asserts that plaintiff is attempting to circumvent the exhaustion of remedies doctrine. Plaintiff admits that these allegations are in addition to the claims set forth in the first amended petition, but asserts that facts previously alleged and undisputed "overwhelmingly support Groves' claims." Plaintiff recognizes that it has a considerable burden to establish that a breach has occurred. This, plaintiff claims, it has achieved.

Basically, plaintiff's argument is threefold: (1) the directive to install the steel liner constituted a cardinal change; (2) the

2. Not pertinent here. A fourth alternative was to be declared in default.

3. The estimated cost of this alternative undertaking is approximately $6 million, not including the approximately $2.2 million construction cost of the pipeline as bid.

4. Pursuant to 28 U.S.C. § 1406(c) (1976).

full-time inspection, supervision, and interim approvals by defendant during construction estops the latter from rejecting the entire pipeline; and (3) the timing of the steel liner directive, creating a "new kind of pipeline," after completion of the one contracted for, raises the remedies of rescission and restitution.

■ We agree with plaintiff that, if it established a cardinal change, we would have jurisdiction to take the case notwithstanding any failure to pursue to conclusion its administrative remedies. The standard is set forth in *Air-A-Plane Corp.*,[5] where we said:

> The basic standard * * * is whether the modified job "was essentially the same work as the parties bargained for when the contract was awarded. * * * " * * *

Plaintiff argues that it meets this standard, that the disproportionate cost of installing the steel liner, as compared to the contract price for constructing the concrete pipe, cries out "cardinal change!" Plaintiff cites *Luria Bros. & Co.*,[6] where we held that changes requiring significant increases in the cost of footings deeper than those originally specified for an aircraft hangar "were of such magnitude that they were not within the scope of the original contract but rather constituted a breach thereof."[7] Also cited is *Edward R. Marden*[8] where faulty specifications resulted in collapse of an aircraft hangar and we held that, although the rebuilt hangar, properly built, was essentially the same structure, the reconstruction involved drastic differences in specifications and increased costs which amounted to a cardinal change and therefore a breach not covered by the changes clause. Those cases, and others where cardinal changes were established, do not help the present plaintiff. Here, although plaintiff *alleges* that it was required to expend $6,000,000 to construct a steel-lined pipeline instead of the contracted-for concrete pipeline costing approximately $2,000,000, plaintiff has not clearly shown that defendant caused this change. Defendant was willing to accept a rebuilt concrete pipeline or a steel-lined pipeline, and plaintiff offered to produce either, at defendant's option. It was at most an Alphonse-Gaston situation in which defendant did not direct the change until plaintiff had agreed to make it. In these circumstances, combined with the admission of plaintiff that it could not recover any money here that it could not recover before the board, and an insufficient showing that the dispute could be resolved any speedier in court than before the board, we are not persuaded to bypass the board in what otherwise is clearly a case for the board.

### III.

■ Even if there were a breach, it is clear that plaintiff made a conscious election to go to the board, and actually filed there. Except for possible time considerations, plaintiff, therefore, is not prejudiced by being held to its choice. The delay occasioned by the dismissal of its action before the board and its filing here is really attributable to plaintiff. The choice of remedy and the choice of forum were clearly plaintiff's, and, what in effect was an "all or nothing" approach, was solely plaintiff's decision.

### IV.

■ In any event, the Contract Disputes Act of 1978 is not applicable to this case. That act provides:[9]

> * * * [T]he contractor may elect to proceed under this Act with respect to any *claim pending then before the contracting officer.* * * * [Emphasis supplied.]

---

5. *Air-A-Plane Corp. v. United States*, 187 Ct.Cl. 269, 275, 408 F.2d 1030, 1033 (1969).

6. *Luria Bros. & Co. v. United States*, 177 Ct.Cl. 676, 369 F.2d 701 (1966).

7. *Id.*, 177 Ct.Cl. at 687, 369 F.2d at 707.

8. *Edward R. Marden Corp. v. United States*, 194 Ct.Cl. 799, 442 F.2d 364 (1971).

9. Contract Disputes Act of 1978, Pub.L.No. 95–563, § 16, 92 Stat. 2391, 41 U.S.C. § 601 note (Supp.III 1979).

This provision has generated considerable litigation [10] in cases involving claims made, and under contracts entered into, prior to the effective date (March 1, 1979) of the act. Under the decisional law as it has developed, it is clear that, whatever other circumstances are alleged or proved by plaintiff, when the contracting officer issued his "final decision" on this claim on February 23, 1979, the claim sued on was not, on March 1, 1979, "pending then before the contracting officer." That this reflects the clear intendment of the act is demonstrated in the opinion of the Armed Services Board of Contract Appeals (ASBCA) in *Monaco Enterprises, Inc.*[11] There, Administrative Law Judge Arons ably traced the legislative history of the act to a conclusion that, where the contracting officers had sent their final decisions to the contractors prior to March 1, 1979, the underlying claims were not, in the ordinary meaning of the word "pending," or consistent with the statutory scheme, "pending then [on March 1, 1979] before the contracting officer," even though such final decisions were not *received* by the contractors until on or after the effective date of the act.[12] We approve the rationale set forth by Administrative Law Judge Arons in which a majority of the ASBCA joined. As applied to this case, it clearly leads to our conclusion, and we so find, that the claim in suit here was not pending before the contracting officer on March 1, 1979, the effective date of the Contract Disputes Act.

## CONCLUSION

Since plaintiff's claim in this case was not pending before the contracting officer on the effective date of the Contract Disputes Act of 1978, that act is not applicable to plaintiff's claim; therefore, direct access to this court under section 10 of the act is not available to plaintiff, and, in the absence of a clear showing of cardinal change, we cannot exercise our jurisdiction until plaintiff has exhausted its administrative remedies. For this, and the other reasons set out above and in our order of May 2, 1981, we have granted defendant's motion to dismiss and have dismissed the petition without prejudice to plaintiff's rights under the Wunderlich Act. In view of our holding, we find it unnecessary to address any other arguments advanced by plaintiff.

---

**10.** *See Brookfield Constr. Co. v. United States,* —— Ct.Cl. ——, 661 F.2d 159; *Monroe M. Tapper & Assocs. v. United States,* 222 Ct.Cl. ——, 611 F.2d 354 (1979); *Troup Bros. v. United States,* —— Ct.Cl. ——, 643 F.2d 719 (1979); *Monaco Enterprises, Inc.* ASBCA No. 23611, 79-2 BCA ¶ 13,933. *See also Tuttle/White Constructors, Inc. v. United States,* —— Ct.Cl. ——, 656 F.2d 644 (1981).

**11.** *Monaco Enterprises, Inc., supra* note 10.

**12.** In the instant case, we note that the "final decision" was both issued *and received* prior to March 1.